IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

United States of America,

v.                                                          Case No. 4:12-cr-9-MLB

Ospicio Olea Aguilar,

        Defendant.

_____/

## OPINION & ORDER

Defendant Ospicio Olea Aguilar moves for compassionate release under 18 U.S.C.§ 3582(c)(1)(A).  (Dkts. 459, 465, 467.)  The United States opposes his motion.  The Court denies it.

### I.  The Background Facts

Following his indictment for participating in the robbery of a confidential informant during a drug deal, Defendant Aguilar pleaded guilty to armed robbery and conspiracy to possess with the intent to distribute cocaine in violation of 18 U.S.C. §1951(a) and 21 U.S.C. §846, respectively.  (Dkts. 195, 196.)  Accepting the parties recommendation, the Court sentenced Defendant to imprisonment for 180 months.

Defendant Aguilar is being detained at FCI Berkley. The Court denied his prior motion for compassionate release for procedural reasons. (Dkt. 437.) Defendant Aguilar filed another motion claiming he should be released because he suffers from medical conditions that put him at risk for contracting a severe Covid-19 infection while incarcerated and because he needs to care for his ailing mother. (Dkts. 459, 467.) He moved to amend his motion for compassionate release to argue he should also be released because his lawyer failed to move at sentencing for a downward departure under sections 5H1.6 and 5H1.0 of the Sentencing Guidelines. (Dkt. 465.) He claims that, had his lawyer filed such a motion "the district court would have granted a downward departure." (*Id.*)

## II. The Law

Previously, compassionate release was only available to an inmate if the Bureau of Prisons ("BOP") filed a motion requesting it. *See* 18 U.S.C. § 3582 (as effective Nov. 2, 2002 to Dec. 20, 2018). The First Step Act of 2018 changed that by allowing a defendant to file a motion for compassionate release directly with the sentencing court. 18 U.S.C. § 3582(c)(1)(A). Before doing so, the inmate must "fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his or her] behalf or the lapse of 30 days from the receipt of such a request by the warden of [his or her] facility, whichever is earlier." *Id.* A court may then modify a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable," the court finds "extraordinary and compelling reasons warrant the reduction" and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Section 1B1.13 of the Sentencing Guidelines and its Application Note 1 provide the policy statement for what constitutes "extraordinary and compelling reasons," including certain medical conditions. U.S.S.G. § 1B1.13(2)–(3) (Application Note 1.).[1] The policy statement also says the Court must determine "[t]he defendant is not a danger to the safety of

---

[1] Extraordinary and compelling reasons include medical conditions like a terminal illness; some other serious physical, medical, or cognitive impairment that prevents a defendant from providing self-care within the correctional facility; the attainment of age 65 with serious deterioration as a result of the aging process; or family circumstance like the loss of a caregiver to minor children or the incapacitation of a spouse with no other caregiver. *See* U.S.S.G. § 1B1.13(2)–(3) (Application Note 1).

any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* The Sentencing Commission has not updated U.S.S.G. § 1B1.13 since passage of the First Step Act, including possibly to identify additional categories of extraordinary and compelling circumstances. But that section and Application Note 1 still apply and limited what a court may consider as extraordinary and compelling circumstances. *United States v. Bryant*, 996 F.3d 1243, 1265 (11th Cir. 2021).

### III. The Legal Analysis

It appears Defendant Aguilar filed his motion with this Court before first requesting the warden file such a motion on his behalf and then either exhausting his administrative rights from the denial of that request or waiting 30 days after making it. He never alleges in his petition that he did so but merely attaches an email he sent a Bureau of Prisons Case Manager stating, "Can you forward this message to the Warden or Proper department. I sent a cop-out to the warden back in October 15, 2021 requesting compassionate release in light of my medical condition that were outlined by the cdc as of March 2021. I have family circumstance to where my father passed away in august of 2021 and my mother is currently ill." (Dkt. 459 at 6.) The BOP has no record of

defendant Aguilar making any such request. (Dkt. 463-4.) Defendant Aguilar's email to his case manager cannot carry his burden of showing he has complied with the requirements of the First Step Act. By the plain language of the statute, the Court lacks the authority to consider Defendant Aguilar's motion.

But even if he had that authority, the Court would conclude Defendant Aguilar has failed to show extraordinary and compelling circumstances justifying compassionate release. Defendant Aguilar relies on the current Covid-19 pandemic as a basis for release. That is not a reason identified in the statute or policy statement. And the mere existence of the Covid-19 pandemic does not justify compassionate release, especially considering current knowledge as to how the virus spreads, safety measures people can use to minimize that risk, recent advances in vaccination to prevent infection, increased treatment options, and the overall decline in the spread and severity of the virus. *United States v.* Jenkins, 2021 WL 1311044 (N.D.Ga. April 8, 2021) ("The mere existence of the COVID-19 pandemic "cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.") By

all accounts, the virus is likely to be with us for some time and society, including those in the BOP, must learn to live alongside the risk it poses.

Of course, some inmate might be able to show extraordinary and compelling reasons for compassionate release by demonstrating particularized susceptibility to the disease and a heightened risk of contracting the disease at his or her institution. But, to do that, the inmate would have to show his or her condition meets the policy statements established by the Sentencing Guidelines, specifically medical conditions like a terminal illness or some other serious physical, medical, or cognitive impairment that prevents the defendant from providing self-care within the correctional facility. *See* U.S.S.G. § 1B1.13(2)–(3) (Application Note 1). Defendant Aguilar has not presented such a case.

Most importantly, he has not shown that his medical conditions raise his risk of a serious medical infection. His medical conditions (excess weight, former tobacco and controlled substance use, and depression) are, in fact, not odd or extraordinary in any way. To conclude these conditions satisfied the statute would completely eviscerate the "extraordinary and compelling" standard. The Eleventh Circuit has

found far more serious medical conditions insufficient to meet this standard. *United States v Giron*, 15 F4th 1343, 1346(11th Cir. 2021) (affirming district court's conclusion that high blood pressure, his cholesterol, and coronary artery disease insufficient to warrant compassionate release despite Covid-19.). Put in terms of the relevant policy statements, nothing suggests defendant Aguilar's medical conditions are terminal or "substantially diminish" his ability to "provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. n.1(A); *see United States v. Freeman*, 2020 WL 2449345, at *1–2 (S.D. Ga. May 12, 2020) (denying motion for compassionate release because, although defendant had "diabetes, asthma, high blood pressure and [was] on a C-PAP breathing machine," he "present[ed] no medical evidence" that his conditions were terminal or substantially diminished his ability to provide self-care in prison). Nor is there any evidence of "a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13 cmt. n.1(B). "This is significant because it is [Defendant] who bears the burden of demonstrating his entitlement to a sentence reduction with the requisite factual support." *United States v. Jenkins*, 2021 WL 1311044, at *4 (N.D. Ga. Apr. 8, 2021).

The Court also rejects Defendant Aguilar's suggestion that the facility poses more risk to him, even considering his medical situation. He complains that he has to touch doors as he moves about the facility, must stand in line with other inmates, and (when he leaves the facility for medical purposes) must ride with guards who use public restrooms. (Dkt. 459 at 3.) He says these kinds of circumstances raise a risk that he will contract Covid-19. (*Id.*) These are normal actions of everyday life and, in no way, pose any extraordinary and compelling reason for compassionate release. And Defendant Aguilar presents no data or any evidence to suggest FCI Berkley is doing a bad job of managing the pandemic. There is also no evidence Defendant Aguilar would be substantially safer at home in Mexico than at his current facility where medical care is accessible and extensive COVID-19 precautions are (presumably) in place. *See United States v. Hill*, 2020 WL 1991405, at *5 (D. Nev. Apr. 27, 2020) ("Defendant . . . offers nothing more than mere speculation that home detention would be less risky than detention at [his federal facility], which has screening practices and other reasonable COVID-19 precautions in place.") Finally, Defendant Aguilar has also refused the Covid-19 vaccination, citing religious reasons. (Dkt. 459 at

4.) The Court seriously doubts an inmate can refuse to protect himself or herself with the vaccine and then argue he or she is at a serious risk from Covid-19. *See United States v. Heard*, 13-CR-40-TWT, Doc. 187, at p. 5 (N.D. Ga. July 8, 2021) (finding no extraordinary and compelling reason for obese inmate with hypertension based on his refusal of the Pfizer vaccine); *United States v. Baeza-Vargas*, 532 F. Supp. 3d 840, 844 (D. Ariz. 2021) ("Judges of this Court, as well as others around the country, have ruled with consistency that an inmate's denial of a Covid-19 vaccination weighs against a finding of extraordinary and compelling circumstances.") He may have religious reasons to refuse the vaccination, but that choice does not render him unfit for incarceration.

The Court likewise concludes Defendant Aguilar's mother's medical condition does not warrant compassionate release. According to the Sentencing Guidelines, such family circumstance only warrant compassionate release when they involve the loss of a caregiver to minor children or the incapacitation of a spouse/partner with no other caregiver. *See* U.S.S.G. § 1B1.13(2)–(3) (Application Note 1). The need to care for a parent is not included, and the Court may not expand compassionate release beyond the terms of the policy statement. *Bryant* 996 F.3d at

1243 ("district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13"). For the same reason, the Court denies Defendant Aguilar's request for compassionate release because his lawyer failed to move for a downward departure at sentencing under sections 5H1.6 and 5H1.0 of the Sentencing Guidelines. The law does not recognize that as a basis for compassionate release.

**IV.   The Conclusion**

For these reasons, the Court **DENIES** Defendant Aguilar's motion for compassionate release. (Dkts. 459, 465, 467.)

**SO ORDERED** this 15th day of April, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE